UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

NICOLE MARTIN,                          )
                                        )
       Movant,                         )
                                        )
       v.                              )    1:07-cr-00017-JAW
                                        )    1:10-cv-00461-JAW
                                        )
UNITED STATES OF AMERICA,               )
                                        )
       Respondent.                     )

**ORDER REJECTING THE RECOMMENDED DECISION
OF THE MAGISTRATE JUDGE**

After concluding that Nicole Martin has raised a factual question about whether she asked her defense lawyer to file a notice of appeal, which he failed to file, the Court rejects the Magistrate Judge's recommendation to dismiss Ms. Martin's petition under 18 U.S.C. § 2255 and instead schedules an evidentiary hearing to determine the facts.

**I.  STATEMENT OF FACTS**

No stranger to the criminal law, on April 11, 2007, Nicole Martin was charged in a three-count indictment with a March 28, 2007 possession with the intent to distribute cocaine, oxycodone, and heroin. *Indictment* (Docket # 1:07-cr-17-JAW) (ECF No. 1).[1] With that indictment, the Government filed an Information Charging Prior Convictions, listing a September 10, 2002 federal conviction for possession with the intent to distribute heroin. *Information Charging Prior*

---

[1]  The Court's docket references are to 1:07-cr-00017-JAW unless otherwise noted.

*Convictions* (ECF No. 4). Furthermore, she was on supervised release under the September 10, 2002 charge when she was arrested on March 28, 2007, prompting the Government to also file a petition for revocation of supervised release, based on new criminal conduct. *Pet. for Warrant or Summons for Offender under Supervision* (Docket # 1:02-cr-00040-JAW) (ECF No. 21).

On July 5, 2007, Ms. Martin pleaded guilty to the three-count indictment and admitted to the violation of supervised release. *Minute Entry* (ECF No. 21); *Minute Entry* (Docket # 1:02-cr-00040-JAW) (ECF No. 36). Ms. Martin entered into a plea agreement with the Government which provided for a waiver of her rights to appeal:

> 4. <u>Appeal Waivers</u>. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Knowing that, Defendant waives the right to appeal the following:
>
> A. Defendant's guilty plea and any other aspect of Defendant's conviction and finding of supervised release violations in the above-captioned cases; and
>
> B. A sentence of imprisonment (however the court determines the sentence) that does not exceed the number of months provided for in Offense Level 31 of the United States Sentencing Commission, <u>Guidelines Manual</u> (2006), at the Criminal History Category to be determined by the Court. The Defendant's waiver of her right to appeal shall not apply to appeals based on a right that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.
>
> C. A sentence of imprisonment on her supervised release revocation in Criminal No. 02-cr-40-B-W (however the court determines the sentence) that does not exceed the number of months provided for a Grade A violation, as set forth in Section 7B1.4(a) of the United States Sentencing Commission, <u>Guidelines Manual</u> (2006), at the Criminal History Category to be determined by the Court. The

> Defendant's waiver of her right to appeal shall not apply to appeals based on a right that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.

*Agreement to Plead Guilty and Cooperate* (ECF No. 19) (*Plea Agreement)* at 4.

After Ms. Martin entered her guilty pleas, a significant sentencing issue arose as to whether the enhanced penalty provisions of the career offender Guideline applied to her. If the Court determined Ms. Martin not to be a career offender, she faced a Guideline sentence range of between 27 and 33 months; if she was found to be a career offender, the range escalated to 188 to 235 months. *See Sentencing Order* at 6 (ECF No. 62). On December 3, 2008, after extensive briefing, the Court issued a Sentencing Order, concluding that the career offender provision applied to Ms. Martin. *Id.* at 12.

Section 4B1.1 of the United States Sentencing Commission Guidelines—the career offender provision—worked in Ms. Martin's case by increasing the base offense level from 14 to 34 and the criminal history category from V to VI. *See id.* at 6 nn.2-3. Applying this provision, with a three-level reduction for acceptance under United States Sentencing Commission Guideline § 3E1.1, Ms. Martin's total offense level became 31. Thus, the offense level of 31 under the career offender provision with acceptance corresponded with the terms of the appeal waiver in her plea agreement. In other words, Ms. Martin agreed to waive her right to appeal on the assumption that the career offender provision of the Guidelines would apply to her.

On January 5, 2009, Ms. Martin appeared for sentencing. The Court calculated her offense level under the Guidelines at 31, resulting in the Guidelines

sentence range of 188 to 235 months. However, the Government moved for a reduction under United States Sentencing Commission Guideline § 5K1.1 and the Court, treating the range as advisory, sentenced Ms. Martin to a term of 108 months on the indicted charges and 15 months on the revocation charge with all but two months concurrent with the 108-month sentence. *J.* (ECF No. 68); *Revocation J.* (Docket # 02-cr-40-B-W) (ECF No. 43). The net sentence was 110 months. On December 10, 2009, Ms. Martin filed a notice of appeal, *Notice of Appeal* (ECF No. 74), and on October 21, 2010, the Court of Appeals for the First Circuit dismissed the appeal as untimely. *J.* (ECF No. 90).

On November 22, 2010, Ms. Martin moved to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. *Mot. under 28 U.S.C. § 2255 to Vacate Set Aside or Correct a Sentence by a Person in Fed. Custody* (ECF No. 96) (*Def.'s Mot.*). In the § 2255 motion, Ms. Martin raised three grounds: (1) that she had pleaded guilty without understanding the nature of the charge and the consequences of the plea, especially the potential impact of the career offender enhancement; (2) that she asked her attorney to appeal but he failed to do so; and (3) that, essentially for these reasons, her defense attorney rendered her ineffective assistance of counsel. *Id.* at 7. To her motion, Ms. Martin attached a letter from her attorney dated December 4, 2008. *Id.* Attach. 1, *Letter from Attorney Marvin Glazier to Nicole Martin* (*Glazier Letter*). In the letter, Ms. Martin's attorney enclosed a copy of the Court's December 3, 2008 Sentencing Order, which he informed her, "we will have to Appeal." *Glazier Letter* at 1. The Government answered Ms. Martin's motion on June 9, 2011.

4

*Gov't's Ans. to Mot. under 28 U.S.C. § 2255, Mot. for Summ. Dismissal* (ECF No. 112).

Ms. Martin replied on August 19, 2011. *Movant's Ans. to Gov't's Mot. for Summ. Dismissal, Mot. Requesting Evidentiary Hr'g* (ECF No. 115) (*Def.'s Reply*). In her reply, Ms. Martin substantially expanded the grounds for her § 2255 motion. She asserted that Attorney Glazier was ineffective in the following ways: (1) that he failed to present Agent Ruth Duquette as a witness at the evidentiary hearing on the career offender issue, *id.* at 2-4; (2) that he failed to alert the Court to *United States v. Torres*, 747 F. Supp. 813 (D. Me. 1990) and other case law that would have dictated a different result on the career offender issue, *Def.'s Reply* at 5-14; (3) that he failed to object to the Court's factual and legal errors in the Sentencing Order, *id.* at 4-14; (4) that he directed her to sign an unfavorable plea agreement against her better judgment, assured her of her right to appeal, and failed to realize that she did not fully understand the significance of the plea agreement, *id.* at 15-18; (5) that he neglected to correct the prosecutor's "lies and inaccuracies," *id.* at 18-19; (6) that he misinformed her that despite the plea agreement, she could appeal the sentence, *id.* at 20-22; (7) that directly after the sentencing, he informed her for the first time that she could not appeal but that he would continue "working on an appeal," *id.* Attach. 1, *Aff. of Nicole Martin* (*Martin Aff.*); (8) that directly after sentencing, he assured members of her family that there were other avenues that could be explored and not to lose hope, *id.* Attach. 2, *Aff. of Brenda J. Witham* (*Witham Aff.*); *id.* Attach. 3, *Aff. of Tammy J. Campbell* (*Campbell Aff.*); (9) that approximately

5

three weeks after the sentencing, he assured Ms. Martin's godfather that he was working on her appeal, *id.* Attach. 4, *Aff. of Jeffrey Starbird* (*Starbird Aff.*); (10) that she should have received a downward departure for criminal history and a variance under *Kimbrough v. United States*, 552 U.S. 85 (2007), *id.* at 22-29; and, (11) that the Court should grant an evidentiary hearing on these issues. *Id.* at 30.

The United States Magistrate Judge filed her Recommended Decision on November 15, 2011, recommending that the Court dismiss the petition. *Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 116). Nicole Martin filed her objections to the Recommended Decision on December 6, 2011.

## II. DISCUSSION

### A. The Failure to File a Notice of Appeal

Ms. Martin's § 2255 motion is predicated on ineffective assistance of counsel grounds and her most salient point is her claim that she asked Attorney Glazier to file a notice of appeal from her sentence and he failed to do so. The United States Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). The *Roe* Court explained:

> This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.

*Id.* Once the defendant alleges that her counsel failed to file a notice of appeal despite her request to do so, a court has "no authority to credit petitioner's counsel's letter over petitioner's." *Berrio-Callejas v. United States*, No. 96-1524, 1997 U.S. App. LEXIS 32031, at *2 (1st Cir. Nov. 12, 1997). Instead, when a defendant asserts that she instructed counsel to file a notice of appeal, "[a]n evidentiary hearing is required to establish whether this is true." *Garvey v. United States*, Ca. No. 08-10353-MLW, 2010 U.S. Dist. LEXIS 136379, at *14 (D. Mass. Dec. 23, 2010). Alternatively, if no evidentiary hearing is held, the court "take[s] as true the sworn allegations of fact set forth in the petition unless those allegations are merely conclusory, contradicted by the record, or inherently incredible." *Escudero-Aponte v. United States*, 65 Fed. Appx. 333, 335 (1st Cir. 2003) (quoting *Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002)).

Here, the question is whether Ms. Martin's allegations are sufficient to generate an evidentiary hearing. To meet this standard, Ms. Martin must make a "specific allegation that petitioner requested counsel to file an appeal, or even that petitioner desired to appeal [her] sentence." *Id.* The evidence is not unequivocal. In her petition, Ms. Martin states:

> Petitioner desired to and stated desire to appeal and counsel had promised her in written correspondence that he would appeal the Judge[']s decision yet never filed any appeal.

*Def.'s Mot.* at 7. She attached the December 4, 2008 letter from Attorney Glazier, which was written after the plea agreement had been entered into and the guilty plea had been accepted and which said "we will have to Appeal." *Glazier Letter* at 1.

7

Ms. Martin asserts, in the affidavit accompanying her reply, that after the January 5, 2009 sentencing, when she asked Mr. Glazier about an appeal, he "stated that we could not, 'right now,' but that he would continue 'working on an appeal.'" *Martin Aff.* at 1. Similarly, other family members contend that Mr. Glazier told them, "Don't worry, it's not over yet. There are other avenues that can be pursued. Don't lose hope." *Witham Aff.* at 1; *Campbell Aff.* at 1. Finally, Ms. Martin's godfather alleges that three weeks after the sentencing, Attorney Glazier told him that he was "working on her appeal at that time." *Starbird Aff.* at 1.

Under the express terms of the plea agreement, Ms. Martin waived her right to appeal any sentence based upon a Sentencing Guidelines' offense level of 31, *Plea Agreement* at 3-4, and the Court used the total offense level of 31 as a starting point in imposing a much lower sentence. As regards a direct appeal of the sentence, the assertion that Mr. Glazier promised to file an appeal flies in the face of the plea agreement. Nevertheless, as the Court informed her at the end of the sentencing hearing, if Ms. Martin wished to challenge the effectiveness of the plea agreement by way of appeal, she would have had a right to appeal the sentence to the First Circuit. *Sentencing Tr.* at 50:3-12. Thus, if Attorney Glazier's statements were directed to an appeal that challenged the effectiveness of the plea agreement, Ms. Martin's and the other witnesses' claims about his statements promising to appeal after sentencing are not as "inherently incredible" as might appear.

Even so, the statements that Ms. Martin and the witnesses attribute to Mr. Glazier may not be enough to sustain her burden of showing that defense counsel

8

disregarded her "specific instructions" to file a notice of appeal. *See Roe*, 528 U.S. at 477. Put another way, Ms. Martin must have "reasonably demonstrated to counsel that [she] was interested in appealing." *Id*. at 480. The statements quoted by Ms. Martin suggest that she asked Mr. Glazier about whether she could appeal and he told her that she could not "right now." However, he allegedly told her and others that he would continue "working on it" and later reiterated these same words to Mr. Starbird. Mr. Glazier's statements, if true, could have merely been a reference to the possibility that his client could appeal the effectiveness of the plea agreement's waiver of appeal provision and he later determined such an appeal would be frivolous. The immediate question is not, however, whether the petition will be ultimately successful, but whether the allegations in Ms. Martin's petition are sufficient to generate an evidentiary hearing.[2]

"While a petitioner 'is not entitled to an evidentiary hearing as a matter of right,' an evidentiary hearing sometimes serves the ends of justice." *Ramos-Martinez v. United States*, 638 F.3d 315, 325-26 (1st Cir. 2011) (quoting *David v. United States*, 134 F.3d 470, 477 (1st Cir. 1998)). A § 2255 evidentiary hearing is not warranted if "(1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations 'need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.'" *David,* 134 F.3d at 477. Ms. Martin's motion is adequate on its face; her allegations are based on purported

---

[2] In determining whether to order an evidentiary hearing, the Court cautions that it has received no information as to whether Ms. Martin asked Mr. Glazier to file an appeal other than what is a matter of record. It has not heard from Attorney Glazier.

facts, do not contradict the record, are not inherently incredible and, if true, may entitle her to relief. *See Rodriguez v. United States*, 741 F. Supp. 2d 344, 346 (D. Mass. 2010) (noting that under First Circuit law § 2255 claims should be denied "when the record conclusively contradicts them" but recommending an evidentiary hearing because a clear dispute of fact—whether the petitioner had told his attorney to appeal—had been presented). Considering these factors together with the earlier letter from Mr. Glazier about the need to appeal the Sentencing Order, the Court concludes that an evidentiary hearing on Ms. Martin's allegations is in order.

In the Recommended Decision, the Magistrate Judge points out that "the career offender determination did not fully control the sentence, thus blunting the force of counsel's earlier letter to Martin promising an appeal of the career offender determination." *Recommended Decision* at 13. This is correct, yet it is also true that Ms. Martin's career offender status did affect her sentence. Even though the Court did not sentence Ms. Martin within the elevated career offender Guideline range, she received a sentence substantially higher than the Guideline range if she had not been categorized as a career offender. In accordance with *Kimbrough*, this Court used the career offender sentencing range of 188 to 235 months as the "starting point and initial benchmark" for its 18 U.S.C. § 3553(a) analysis. 552 U.S. at 108 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). Without career offender status, her guideline range would have been only 27 to 33 months.

10

Starting from 188 to 235 months is obviously different than starting from 27 to 33 months.

Finally, in determining whether to order an evidentiary hearing, the Court has not considered what issues Ms. Martin would have raised on appeal or guessed at the likelihood of their success. The First Circuit has stressed that in order to be entitled to an evidentiary hearing, the petitioner "does not have to show that there are meritorious issues to be appealed." *Bonneau v. United States*, 961 F.2d 17, 23 (1st Cir. 1992).

### B. The Remaining Claims

As the Court is proceeding with an evidentiary hearing on whether Ms. Martin requested Mr. Glazier to file a notice of appeal that he did not file, it declines to rule on the multiplicity of other issues that Ms. Martin has raised. It seems wiser to allow Ms. Martin to obtain counsel and to allow her to consult with the new defense lawyer before the Court rules on the remaining claims.

### III. CONCLUSION

The Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record. The Court has made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision. The Court REJECTS the Recommended Decision, will consider whether Ms. Martin qualifies for appointed counsel, and will schedule an

evidentiary hearing.³ The Court, therefore, GRANTS Ms. Martin's request for an evidentiary hearing.

The Court ORDERS the Clerk's Office to supply Ms. Martin with a CJA 23 and ORDERS Ms. Martin to complete that form if she contends that she is financially eligible for appointed counsel as defined in 18 U.S.C. § 3006A so that the Court may determine whether it must appoint counsel pursuant to § 2255 Rule 8(c). Ms. Martin shall either file the completed form within two weeks of the date of this Order or file a statement expressing that she does not wish appointed counsel.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 7th day of June, 2012

---

³ It was the Magistrate Judge who flagged *Rodriquez v. United States*, 395 U.S. 327 (1969), and observed that "[w]hether a 28 U.S.C. § 2255 evidentiary hearing is necessary to address Martin's complaints about her attorney's failure to appeal the career [of]fender status determination is difficult to determine on the current record." *Recommended Decision* at 13. The Court agrees with the Magistrate Judge that even with Ms. Martin's supporting affidavits, the record remains murky, but the question here is not whether Ms. Martin will be ultimately successful, only whether she is entitled to present evidence. The evidentiary hearing will give the parties an opportunity to clarify the existing ambiguity.